[Docket No. 22]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEVEN R. FARRINGTON,<br><br>      Plaintiff,<br><br>      v.<br><br>FREEDOM MORTGAGE CORPORATION.<br><br>      Defendant. | Civil No. 20-4432(RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

Flitter Milz, P.C.
By: Jody Thomas Lopez-Jacobs, Esq.
    Andrew M. Milz, Esq.
1814 East Route 70
Suite 350
Cherry Hill, NJ 08003
    *Attorneys for Plaintiff*

Dinsmore & Shohl LLP
By: Joshua M. Link, Esq.
1200 Liberty Ridge Drive
Suite 310
Wayne, PA 19087
    *Attorney for Defendant*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Before the Court is Defendant Freedom Mortgage Corporation's ("Defendant" or "Freedom Mortgage") Motion to Dismiss. [Docket No. 22]. Defendant contends that Plaintiff Steven R. Farrington's ("Plaintiff" or "Farrington") claims are barred by judicial estoppel because Plaintiff allegedly failed

to disclose the claims he alleges here in his underlying bankruptcy proceeding. Alternatively, Defendant seeks to dismiss three counts of the Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Court will deny Defendant's motion. The Court will also issue an Order to Show Cause as to why this case should not be transfered to the United States District Court for the District of Colorado.

I.   **BACKGROUND**

This dispute begins with Plaintiff's bankruptcy. In June 2013, Plaintiff filed a petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Colorado. [Docket No. 22-3] Plaintiff also filed bankruptcy schedules that required him to list any known or contingent assets and liabilities, along with his proposed Chapter 13 plan. [Id.]. About six months later, the Bankruptcy Court confirmed Plaintiff's plan. [Docket No. 22-5].

In June 2015, Plaintiff filed a Motion for Post-Confirmation Modification to modify the confirmed plan due to a December 2014[1] fire that destroyed his home. [Docket Nos. 1 and 22-7]. In relevant part, Plaintiff claimed that he "wishe[d] to

---

[1]   Plaintiff's Complaint seemingly contradicts his Motion for Post-Confirmation Modification. In his Complaint, Plaintiff states that his house burned down "In or around December 2014." [Docket No. 1, at ¶ 14]. In his bankruptcy motion, however, Plaintiff claims that the fire occurred "in March 2015." [Docket No. 22-7, at ¶ 2].

2

negotiate a settlement with Creditor or the insurance proceeds should satisfy the arrears. [Docket No. 22-7, at ¶ 4]. The following month, the Bankruptcy Court granted Plaintiff's motion. [Docket No. 22-8].

After the fire, Plaintiff's insurer covered the loss. [Docket No. 1, at ¶ 15]. The Deed of Trust required that the insurance company make the check payable to both Plaintiff and his mortgage company. The money was to be used to rebuild Plaintiff's home, unless the mortgage servicer determined that a rebuild was unfeasible. [Id. at ¶ 18]. If the mortgage servicer made that determination, it would then apply the insurance money to the loan. [Id.]. The original loan servicer, a non-party, gave Plaintiff $95,000 to begin rebuilding the home. [Id. at ¶ 19.] This was one of three anticipated draws, and the servicer would provide the remaining two draws as construction continued. [Id.]

After Plaintiff received the first draw, the original loan servicer transferred the remaining loan proceeds of $189,654.48 and the servicing rights to Defendant. [Id. at ¶¶ 20-21]. To date, none of those funds have been distributed to Plaintiff. Instead, the Complaint alleges that Defendant required Plaintiff to complete as much as 90% of the construction before it would distribute additional funds. [Id. at ¶ 22]. Moreover, Plaintiff allegedly requested an additional draw of the insurance money,

and was instead met with multiple canceled inspections and requests for documents. [Id. at ¶¶ 23-31]. This culminated in Plaintiff requesting that Defendant instead apply the insurance money to the principal of the loan. [Id. at ¶32].

Throughout late 2016 and the first half of 2017, the Complaint claims that Defendant repeatedly approved additional draws, only to cancel them days later. [Id. at ¶¶ 33-50]. Then, in July 2017, Defendant purportedly told Plaintiff that it could not release a second draw, until Plaintiff had completed at least 50% of the rebuild. [Id. at ¶ 53]. Plaintiff responded that this would not be possible, because he could not complete 50% of the rebuild, having received only 33% of the funds. [Id.]. The following month, Defendant's inspector concluded that 27% of the rebuild had been finished. [Id. at ¶ 54].

Plaintiff's bankruptcy was discharged and closed on September 11,2018. [Docket No. 22-10]. On October 15, 2018, Plaintiff filed an adversarial proceeding against Defendant in the Bankruptcy Court, seeking his Bankruptcy be reopened for the purpose of pursuing claims against Defendant. [Docket No. 22-11]. Plaintiff, in the Adversary Complaint, alleges that, on September 1, 2018, just days before the Bankruptcy Court's discharge, Defendant mailed Plaintiff a letter stating that his account "had been referred to an attorney for foreclosure." [Id. at ¶25]. Ultimately, the Bankruptcy Court dismissed all but one

4

claim in the Adversary Complaint, and Plaintiff then voluntarily dismissed that claim to file this lawsuit. [Docket No. 28-4].

Here, Plaintiff allege the following: that Defendant (1) violated the Fair Credit Reporting Act, (2) breached its contract with Plaintiff, (3) violated the Real Estate settlement and Procedures Act, (4) breached its duty of good faith and fair dealing, and (5) violated the New Jersey Consumer Fraud Act. Defendant contends, in the within motion, that Plaintiff should be judicially estopped from raising these claims because Plaintiff had an on-going duty to amend his bankruptcy schedules to include the claims against Defendant, that he knew about these potential claims before his bankruptcy closed in September 2018, and that he failed to file amended schedules. Defendant also contends that Plaintiff has failed to state a claim under the Fair Credit Reporting Act or the Consumer Fraud Act, and that Plaintiff cannot assert a claim for both breach of contract and breach of good faith and fair dealing under Colorado law.

## II.  **DEFENDANT'S MOTION**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

### A. Judicial Estoppel

Defendant primarily argues that Plaintiff's Complaint should be dismissed under the doctrine of judicial estoppel. In

6

principle, judicial estoppel states that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (emphasis added). The doctrine "is intended to protect the courts rather than the litigants," id., and should be used to "avoid a miscarriage of justice." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003). In other words, judicial estoppel "is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other." Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 781 (3d Cir. 2001). The Court will apply judicial estoppel when (1) the party to be estopped took two positions that are irreconcilably inconsistent, (2) the party changed his position in "bad faith,", and (3) no lesser sanction would adequately remedy the damage done by the party's misconduct. Id. at 779-780.

Specifically, Defendant contends that Plaintiff's failure to amend the bankruptcy schedules before its September 2018 discharge, as required by 11 U.S.C. § 1306, warrants the imposition of judicial estoppel- particularly because the Complaint in this action clearly states that Plaintiff's claims arose before September 2018. Thus, Defendant concludes,

Plaintiff's allegations here are irreconcilably inconsistent with his representations to the Bankruptcy Court, that Plaintiff changed his position to prevent creditors from recovering on these claims, and only judicial estoppel of these claims are an adequate remedy given Plaintiff's debt forgiveness in bankruptcy.

Defendant has failed to meet its burden. Without the benefit of fact discovery- a "good explanation," see Ryan Operations, 81 F.3d at 358- on these issues, the Court cannot find that Plaintiff took irreconcilably inconsistent positions between his underlying bankruptcy and this case. Plaintiff sufficiently alleges that he disclosed his house fire and intent to settle the insurance issue to the Bankruptcy Court. Indeed, Plaintiff disclosed in his 2015 Motion for Post-Confirmation Modification, that he "wishe[d] to negotiate a settlement with Creditor or the insurance proceeds should satisfy the arrears. [Docket No. 22-7, at ¶ 4]. Moreover, Plaintiff's Adversary Complaint alleges that Defendant referred its dispute with Plaintiff to their "attorney for foreclosure" only days before the underlying bankruptcy closed. What happened between 2015 to 2018 period remains at issue. Clearly, if the parties were attempting to resolve their dispute, thus explaining why Plaintiff did not amend the schedules, Plaintiff cannot be

faulted or estopped by Defendant's decision to take foreclosure action on the heels of a discharge.

The Court is also persuaded, at this stage of the proceedings, by the Bankruptcy Court's view that Plaintiff had not taken irreconcilably inconsistent positions. In a March 2019 Opinion, the Bankruptcy Court held that "[t]he insurance proceeds from the fire that occurred one year [after the Court's December 9, 2013 confirmation of Plaintiff's bankruptcy plan] were, therefore, not property of the Debtor's bankruptcy estate." [Docket No. 22-12]. Indeed, the Court explained that "the debtor's post-confirmation earnings were no longer property of his Chapter 13 estate." [Id.]. As noted above, judicial estoppel protects the legal system from a parties' inconsistent positions. When those allegedly inconsistent positions are made to two different courts and the first court was aware of the potential inconsistency, this Court finds it highly persuasive that the first court concluded the statements to not be irreconcilably inconsistent.

For similar reasons, the Court is also unable to conclude that Plaintiff's purportedly inconsistent positions were taken in bad faith. In finding that Plaintiff's post-confirmation insurance proceeds were not the property of his bankruptcy estate, the Bankruptcy Court relied on In re Dagen, 386 B.R. 777 (Bankr. D. Colo. 2008). In that opinion, the Court held that,

9

upon confirmation, 11 U.S.C. § 1327(b) vests all property in the estate to the debtor, that the Chapter 13 estate then ceases to exist, and that post-confirmation assets are not the property of that now non-existent estate. See Dagen, 386 B.R. at 782. Thus, under Dagen, a party is not required to modify his bankruptcy schedules post-confirmation. Id. Defendant does contend that Dagen was decided incorrectly under 11 U.S.C. § 1306. But regardless of whether Dagen is correct, this Court will not infer bad faith in Plaintiff not listing post-confirmation assets in a bankruptcy proceeding, when caselaw from that same Bankruptcy Court states that he did not have to. To the extent that Plaintiff's representations to the Bankruptcy Court and to this Court are "irreconcilably inconsistent," Defendant has not established bad faith.

Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff's claims as barred by the doctrine of judicial estoppel.

### B. Fair Credit Reporting Act

Defendant also argues that Plaintiff's Fair Credit Reporting Act ("FCRA") count should be dismissed for failure to state a claim. For the reasons stated below, the Court will deny that request.

The crux of Defendant's argument is that Plaintiff's FCRA claim arises from the parties' insurance dispute and that this

dispute is outside the scope of the FCRA. But Defendant misunderstands Plaintiff's claim. As stated in the Complaint, Plaintiff alleges that Defendant "was reporting a host of false information about him to the Big 3 credit bureaus . . . . Defendant was reporting that Plaintiff was 'past due,' listing a highly inflated balance amount, an incorrect payment history of 180+ days late and that Plaintiff was not paying as agreed." [Docket No. 1, at ¶ 58]. Although Plaintiff also mentioned the insurance dispute under his FCRA heading, he is clearly alleging that Defendant reported false information and failed to conduct a reasonable investigation before reporting such information. Defendant did not address this allegation until it filed its reply brief, and, in that brief, it asserted that "Freedom conducted its investigation as required and confirmed that the information was accurate." [Docket No. 30, at 10]. In addition, Defendant acknowledged its "obligation . . . to verify the completeness or accuracy of information provided to credit reporting agencies." [Id. at 8]. This argument, however, relies on numerous fact issues that the Court cannot address in resolving a motion to dismiss.

Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff's FCRA claims.

C. Consumer Fraud Act

Next, Defendant argues that Plaintiff's New Jersey Consumer Fraud Act ("CFA") claims should be dismissed because a breach of contract "without more, is not actionable under the NJ CFA." [Docket No. 22-2, at 23]. This is correct. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 18(1994) (stating that "breach of contract, is not per se unfair or unconscionable."). But Plaintiff has alleged far more than a simple breach of contract. Throughout the Complaint, Plaintiff alleges that Defendant, over the course of several years, made inconsistent requests, issued unreasonable demands, and routinely misled Plaintiff on the status of subsequent draws. The vast majority of these allegations includes the alleged date of the conversation, the contents of that communication, and Plaintiff's response. The Court is also mindful of Plaintiff's allegation that Defendant's predecessor paid the first draw without similar delays. Under these circumstances, Plaintiff has sufficiently pled more than "a mere breach of contract."

Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff's CFA claims.

D. Good Faith and Fair Dealing

Defendant's final argument is that Colorado law does not permit Plaintiff to allege both a breach of contract and a breach of good faith and fair dealing, because the two claims

12

are duplicative. The parties agree that, under Colorado law, every contract contains an implied duty of good faith and fair dealing, and that, ordinarily, "a breach of this duty will only result in damages for breach of contract and will not give rise to tort liability." Goodson v. Am. Standard Ins. Co. of Wisconsin, 89 P.3d 409, 414 (Colo. 2004). But in certain circumstances, "breach of the duty of good faith and fair dealing [can] give[] rise to a separate cause of action arising in tort." Id. Specifically, the Colorado Supreme Court found that this separate cause of action is appropriate in disputes concerning insurance contracts "[d]ue to the special nature of the insurance contract and the relationship which exists between the insurer and the insured." Id. (internal quotation marks omitted).

Here, the Court is satisfied that Plaintiff has sufficiently pled a separate breach of good faith and fair dealing claim under Colorado law. Like Goodson, this claim concerns an insurance dispute, and Plaintiff is alleging that Defendant's unwillingness to pay the remaining draws is unreasonable and in bad faith. In addition, Defendant's argument that a party can only bring both a breach of contract and breach of good faith and fair dealing claim when the underlying contract is an insurance contract misstates Colorado law.

In Goodson and related cases, the Colorado Supreme Court did not necessarily limit a party's ability to bring a separate breach of good faith and fair dealing claim to only insurance contracts. Instead, the Court explained that allowing a plaintiff to pursue a separate cause of action was warranted because insurance contracts are different from ordinary bilateral contracts. [Id.] It noted that "[i]nsureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage." Id. The Court further explained that "there is a disparity of bargaining power between the insurer and the insured; because the insured cannot obtain materially different coverage elsewhere, insurance policies are generally not the result of bargaining." Id. Furthermore, the duty of good faith and fair dealing "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995), as modified on denial of reh'g (Jan. 16, 1996).

These same facts are present here. Defendant's argument is, essentially, that an insurer's discretionary denial of insurance funds to an insured, is a materially different situation than a mortgage servicer's discretionary denial of insurance funds to an insured. But Colorado law does not support that distinction.

14

Although the contract between the parties is not technically an insurance contract, the dispute clearly concerns the non-payment of insurance funds under their contract. Plaintiff did not acquire his home insurance policy to "secure commercial advantage," the disparity in bargaining power between the parties is substantially similar to that of an insurer and an insured, and Defendant is exercising independent discretion on whether and how to disperse insurance funds.

Importantly, Colorado courts have also extended the ability of a plaintiff to assert a separate cause of action for breach of good faith and dealing beyond standard insurance contracts. See Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J, 940 P.2d 348, 353-54 (Colo. 1997) ("Accordingly, we hold that Colorado common law recognizes a cause of action in tort for a commercial surety's failure to act in good faith when processing claims made by an obligee pursuant to the terms of a performance bond."); Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1273-74 (Colo. 1985) ("Since workers compensation serves the same purpose as insurance in general, the [Farmers Grp., Inc. v. Trimble, 691 P.2d 1138(Colo. 1984)] rationale demands that the provider of such compensation deal fairly and in good faith with an employee asserting a compensable injury. . . . we conclude that a claimant of compensation or benefits may bring an action in tort for bad faith by an insurer."); Cary v. United of Omaha

15

Life Ins. Co., 68 P.3d 462, 469 (Colo. 2003), as modified on denial of reh'g (May 19, 2003) (holding that when a third-party administrator "performs many of the tasks of an insurance company" a plaintiff can assert a separate tort claim for breach of the duty of good faith and fair dealing against that administrator for their "investigating and servicing [of] the insurance claims.") These cases often analogized their dispute to insurance contracts as well, and the Colorado Supreme Court typically considered whether the parties had a "special relationship" similar to that of an insurer and an insured. See e.g., Transamerica Premier, 940 P.2d at 352 ("A special relationship exists between a commercial surety and an obligee that is nearly identical to that involving an insurer and an insured.").

Thus, because Colorado law permits a plaintiff to assert a claim for both breach of contract and for breach of the duty of good faith and fair dealing when it has a "special relationship" with defendant akin to that of an insurer and an insured, and because that relationship exists between Plaintiff and Defendant here, Plaintiff may assert a breach of good faith and fair dealing claim here. Accordingly, Defendant's motion to dismiss this count is denied.

### III. <u>28 U.S.C. § 1404</u>

Finally, in considering the "interest of justice," 28 U.S.C. § 1404, the Court observes that this case appears more appropriately venued in the United States District Court for the District of Colorado. Accordingly, the Court will issue an Order to Show Cause directing the parties to file a submission providing the Court with the reasons why it should not transfer this action.

### IV. <u>CONCLUSION</u>

Thus, for the foregoing reasons, Defendant's Motion to Dismiss [Docket No. 22] is denied. In addition, the Court will issue a show cause order instructing the parties to address why this case should remain in the District of New Jersey, and not be transferred to the District of Colorado. An appropriate Order accompanies this Opinion.


Dated: <u>February 25, 2021</u>        s/Renée Marie Bumb
                                       RENÉE MARIE BUMB
                                       United States District Judge