**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEVEN R. FARRINGTON,<br><br>               Plaintiff,<br><br>     v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>               Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 20-04432 KMW-AMD<br><br>**OPINION** |

Appearances:

Cary L. Flitter, Esquire
Jody Thomas López-Jacobs, Esquire
Andrew M. Milz, Esquire
FLITTER MILZ, P.C.
1814 East Route 70
Suite 350
Cherry Hill, NJ 08003
*Counsel for Plaintiff Steven R. Farrington*

Joshua M. Link, Esquire
Dinsmore & Shohi LLP
100 Berwyn Park,
Suite 110
850 Cassatt Road Berwyn, PA 19312
*Counsel for Defendant Freedom Mortgage Corporation*

**WILLIAMS, District Judge:**

## OPINION

### I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Stephen R. Farrington's ("Plaintiff") Motion for Attorney Fees and Costs pursuant to L.Civ.R. 54.2; N.J.S.A. 56:8-19 ("CFA"); and 12 U.S.C. § 2605(f)(3) ("RESPA"). (ECF No. 198). Defendant Freedom Mortgage Corporation ("Defendant") has opposed Plaintiff's Motion. (ECF No. 224). The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons expressed below, the Court will award the requested fees and costs in part for a total award of $516,966.60.

### II. BACKGROUND

The facts and procedural history of this case have been detailed at length in the Court's previous Opinions. (ECF Nos. 101, 127, 217). Accordingly, this Opinion and Order will focus on the details pertinent to the pending motion. On April 20, 2020, Plaintiff brought this action alleging claims arising under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et. seq.* ("CFA"); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605; the Fair Credit Reporting Act ("FCRA"); and common law breach of contract and breach of covenant of good faith and fair dealing. (ECF No. 1). Regarding the CFA, RESPA, and common law claims, Plaintiff's Complaint alleges that after his home was badly damaged by a fire, Defendant breached its obligation pursuant to a Deed of Trust to release the monies required to rebuild his property. (ECF No. 1, ¶¶68-104). Plaintiff's Complaint also alleged that Defendant violated the FCRA by performing an insufficient investigation after Plaintiff disputed its credit reporting and by failing to accurately report the results of that investigation to credit reporting agencies. (*Id.*, at ¶¶58-67).

On July 22, 2020, Defendant filed a Rule 12(b)(6) Motion to Dismiss (ECF No. 22) all of Plaintiff's claims. The Court denied the Motion and issued an Order to Show Cause as to why the

2

case should not be transferred to Colorado. (ECF No. 42). Following the parties' submissions (ECF Nos. 47, 48), the Court discharged the show-cause order, thereby keeping the case in the present forum. (ECF No. 52). The matter proceeded to discovery, which involved written interrogatories, document requests, several depositions, and disputes concerning Defendant's Motions to Quash and Motion for a Protective Order, and Plaintiff's Motion to Compel discovery responses. (ECF Nos. 37, 39, 54, 55, 57, 60, 73, 75; Milz Cert. at ¶46, ECF No. 198-4).

On February 25, 2022, Defendant filed a Motion for Summary Judgment. (ECF No. 86). Plaintiff filed an opposition and Cross-Motion for Summary Judgment concerning his FCRA claim. (ECF No. 90). By Order and Opinion dated October 31, 2022, this Court denied Defendant's Motion for Summary Judgment on all claims except the FCRA claim, which was dismissed from the case. (ECF Nos. 101, 102s). As the matter proceeded to trial, Plaintiff filed four motions *in limine* (ECF Nos. 130-133), and Defendant filed six (ECF Nos. 134-139). The case was tried before a jury from December 11-15, 2023. (ECF 166-171).

On December 18, 2023, the jury awarded: (1) $1,000,000.00 in damages pursuant to the CFA, which the Court then trebled to $3,000,000.00. (ECF Nos. 180, 181); (2) $500,000.00 in breach of contract damages; and (3) $20,000.00 pursuant to RESPA, to which the Court added $2,000.00 in statutory damages per the jury's finding of a "pattern or practice" of violations, for a total judgment of $3,522,000.00 (ECF Nos. 180, 181, 183). Thereafter, Defendant filed a Motion for Judgment as a Matter of Law, or in the Alternative, to Alter or Amend Judgment and/or for a New Trial, which Plaintiff opposed. (ECF Nos. 196, 205, 210). By Order and Opinion dated May 17, 2024, the Court reduced the jury's CFA damages award to $167,601.85, which it trebled to $502,805.55. (ECF Nos. 217, 218).

3

Plaintiff filed the instant motion for attorneys' fees seeking "a lodestar amount of $345,113.00, with a 50% . . . contingency enhancement of $172,556,00 equaling a total fee award of $517,669.00 for services rendered through January 31, 2024." (ECF No. 198, Pl.'s Br. at 1-2). In addition, Plaintiff seeks $11,472.50 in reimbursement for reasonable expenses incurred through that date. (*Id.*) In his Reply, Plaintiff also asks the Court to award $45,204.50 in fees for post-trial work.[1] (Pl.'s Reply Br. at 14). In opposition, Defendant does not contest that Plaintiff is entitled to reasonable fees and costs incurred in litigating its CFA and RESPA claims. (Def.'s Br. at 1). Rather, Defendant argues that Plaintiff impermissibly seeks fees: (1) unrelated to his CFA and RESPA claims; (2) for hours worked on unsuccessful claims; and (3) for duplicative and unnecessary work. (*Id.* at 5-15). Defendant further argues that Plaintiff's request for a 50% fee enhancement is manifestly excessive and not supported as a matter of law. (*Id.* at 15-21).

### III. LEGAL STANDARD

The New Jersey Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any commercial practice that is unconscionable or abusive, . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid[.]" N.J.S.A. 56:8-2.[2] The statute provides individual consumers with a cause of action to recover funds and entitles a plaintiff prevailing under the CFA to recover "reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19; *see also Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 n.71 (3d Cir. 2016) (holding the CFA

---

[1] Specifically, Plaintiff responded to Defendant's Motion for Stay pending appeal (ECF No. 194), supersedeas bond (ECF No. 194), Motion for Judgment as a Matter of Law and Motion for a New Trial (ECF No. 196, 205, 211).

[2] The New Jersey Supreme Court has held the three main purposes of the CFA are: 1) to punish the wrongdoer through the award of treble damages; 2) by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual; and 3) to compensate victims for actual losses. *Wanetick v. Gateway Mitsubishi*, 163 N.J. 484, 490 (2000).

4

"*mandates* that successful plaintiffs receive . . . attorneys' fees and costs."). The RESPA likewise provides that a prevailing plaintiff is entitled to recover "the costs of the action, together with any attorneys['] fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." 12 U.S.C.A. § 2605. *See Giordano v. MGC Mortg., Inc.*, 160 F.Supp.3d 778, 783 (D.N.J. 2016) ("[A]ttorneys' fees are . . . enumerated as recoverable losses in § 2605(f)(3).") (citation omitted).

"The lodestar method is commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation . . . ." *Monteleone v. Nutro Co.*, No. CV 14-801, 2016 WL 3566964, at *2 (D.N.J. June 30, 2016) (applying lodestar to method to CFA claim). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The district court should exclude hours that are not reasonably expended." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* The court may "reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.'" *Id.* (quoting *Hensley*, 461 U.S. at 433); *see Rendine v. Pantzer*, 141 N.J. 292, 335 (1995).

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* "Once the court determines the reasonable hourly rate, it

5

multiplies that rate by the reasonable hours expended to obtain the lodestar." *Rode*, 892 F.2d at 1183. "The lodestar is presumed to yield a reasonable fee." *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F.Supp.2d 480, 484 (D.N.J. 1998). "The lodestar calculation requires the Court to 'carefully and critically' evaluate the hours and the hourly rate put forth by counsel." *Blakey v. Cont'l Airlines, Inc.*, 2 F.Supp.2d 598, 602 (D.N.J. 1998).

"The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183. "This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.* "This adjustment is not meant to maintain any ratio or proportionality between the amount of damages and attorney's fees, but, rather, to assure that fees are awarded only to the extent that the litigant was successful." *Norton v. Wilshire Credit Corp.*, 36 F.Supp.2d 216, 219 (D.N.J. 1999). "This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." *Rode*, 892 F.2d at 1183.

Finally, the Court considers whether to enhance the lodestar fee "to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Walker v. Giuffre*, 209 N.J. 124, 133 (2012). The Court's authorization of a contingency enhancement arose from the "conclusion that a fee award cannot be 'reasonable' unless the lodestar is adjusted to reflect the actual risk that the attorney would not receive payment if the suit did not succeed." *Id.*

## IV. DISCUSSION

First, the Court observes that Defendant does not challenge the hourly rates of Plaintiff's counsel. Plaintiff's counsel has submitted certifications pursuant to L.Civ.R. 54.2 and certifications of unaffiliated New Jersey practitioners in support of the rates submitted. Notably,

the rates of the Milz firm attorneys fall within the appropriate range of rates set forth by the Community Legal Services (CLS) fee survey endorsed by the Third Circuit as an appropriate gauge of market rates in the Philadelphia metropolitan area.[3] Defendant has not submitted any proofs or argument to contest these rates. Accordingly, the Court finds that the rates of Plaintiff's counsel are reasonable. *See Maldonado*, 256 F.3d at 184.

The Court next addresses the more contentious issue of whether the hours performed by Plaintiff's counsel in the instant matter were reasonable.

### A. Hours for Plaintiff's FCRA, RESPA, Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing Claims.

As a threshold issue, the Court must determine whether the hours Plaintiff's counsel submitted relating to his FCRA, RESPA, breach of contract and breach of covenant claims are sufficiently interrelated to his CFA claims to warrant their inclusion in calculating the lodestar.

"[W]hen a plaintiff's related, alternative theories of liability involve common facts, those theories are not 'distinct' claims; the court should focus on the overall relief the plaintiff obtained in relation to the hours reasonably expended." *Doe v. Bank of Am., N.A.*, No. CV 16-3075, 2018 WL 5005004, at *2 (D.N.J. Oct. 15, 2018) (quoting *Silva v. Autos of Amboy, Inc.*, 267 N.J. Super. 546, 556 (N.J. Super. Ct. App. Div. 1993). The appellate panel in *Silva* applied this principle to common law and federal labelling statute claims that "shared a common core of operative facts and were bottomed on related legal theories" to the CFA claims. *Silva*, 267 N.J. Super. at 559. The panel reasoned that "[a]pplication of a mechanical rule awarding fees based on the number of counts in a complaint undercuts the salutary purpose of promoting independent representation,"

---

[3] While Osborne does not provide a reference to any fee survey for the Colorado market, the Court accepts the representations of unaffiliated counsel with regard to Osborne's rate, which Defendant does not contest. (*See Certification* of Stephen DeNettis, Esq., ECF No. 198-10; Certification of Andrew Wolf, Esq., ECF No. 198-9).

7

because doing so "may discourage competent counsel from undertaking the prosecution of bona fide consumer fraud actions, or from including related, meritorious nonconsumer fraud counts in a complaint against a deceitful vendor." *Id.* "There is no precise rule or formula for making these determinations" and the Court "necessarily has discretion in making this equitable judgment." *Jama v. Esmor Corr. Servs., Inc.*, 577 F.3d 169, 179 (3d Cir. 2009).

Here, the Court finds that Plaintiff's common law claims arise from the same core of common facts as his CFA claim. Defendant does not dispute that the CFA claim related to its refusal to disburse insurance proceeds to which Plaintiff was entitled and Defendant's subsequent failure to apply proceeds to the loan. Similarly, Plaintiff's breach of contract claim arose from Defendant's violation of the Deed of Trust that required Defendant to disburse or credit Plaintiff's loan balance. As a result, Plaintiff claimed Defendant breached the covenant of good faith and fair dealing by withholding the insurance money it rightfully owed to Plaintiff. Relatedly, Plaintiff's RESPA claim was based on Defendant unconscionably charging Plaintiff a premium to insure the burnt-down dwelling. The Court finds in its discretion that these claims arose from the same "core of common facts"—Defendant's unconscionably deficient performance of its obligations to Plaintiff. Notably, the express language of the CFA (which *mandates* fee shifting), overlaps with the legal theories for breach of contract and breach of the covenant of good faith and fair dealing. N.J.S.A. 56:8-2 (prohibiting "*any* commercial practice that is *unconscionable or abusive*, . . . in connection with the sale or advertisement. . . of any merchandise or real estate, or with the *subsequent performance* of such person as aforesaid[.]") (emphasis added).[4] Thus, the Court will not reduce the hours Plaintiff's counsel spent pursuing the common law and RESPA claims, which

---

[4] Indeed, Plaintiff's successful legal theory on his CFA claim was that "[i]n the performance of its contractual duties" pursuant to "the Deed of Trust," Defendant "engaged in conduct that violates the CFA." (Compl. ¶¶100, 103).

8

were not "distinct" from the CFA claims, but "were bottomed on related legal theories" and the same "core of common facts." *See Silva*, 267 N.J. Super. at 559.

Conversely, the Court finds that Plaintiff's unsuccessful FCRA claim was based on distinct facts and law, and thus the hours committed to it are "not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183. Plaintiff's FCRA claim was based on Defendant's alleged failure to "accurately report a lower balance reflecting" that Defendant was withholding Plaintiff's insurance money. (Pl.'s Reply Br. at 3-4). But as this Court found, "furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." (ECF No. 101, at 24-25 (quoting *Esperance v. Diamond Resorts*, No. 1:18-CV-10237, 2022 WL 1718039, at *5 (D.N.J. May 27, 2022)). Plaintiff appears to tacitly acknowledge that the time spent litigating the FCRA claim was distinct from his remaining claims. In his moving brief, Plaintiff states that he is "not seeking the time spent litigating the FCRA claim that was ultimately dismissed at summary judgment." (Pl.'s Br. at 15). In his Reply, Plaintiff further offers to voluntarily reduce his request for fees on any tasks partially involving FCRA claims. (Pl.'s Reply, at 4-7). The Court agrees with the parties that the FCRA claim is "distinct in all respects" from the remaining claims.[5] *Rode*, 892 F.2d at 1183.

The Court accepts Plaintiff's voluntary reductions for time spent litigating the FCRA claim,[6] but in its discretion will further reduce these hours as follows:

---

[5] As the FCRA itself allows for statutory fee shifting, the exclusion of time does not risk undermining the statutory purpose of incentivizing competent counsel to raise CFA and FCRA claims because each can be evaluated on its own strength. *See* 15 U.S.C. § 1681s–2b. Rather, that risk is more pronounced in the context of excluding time spent litigating "*nonconsumer fraud counts* in a complaint against a deceitful vendor" such as breach of contract and breach of covenant, which are not excluded here as a result. *See Silva*, 267 N.J. Super. at 559 (emphasis added).

[6] The Court does not make any reductions for Plaintiff's counsel Cary L. Flitter's entries, as an exacting review of the record reveals that his relatively low number of hours were limited to providing general oversight regarding litigation strategy or otherwise adequately excluded in Plaintiff's voluntary reductions. (*See* ECF No. 198-4).

1. *Drafting of Complaint Relating to FCRA Claim*

Defendant argues that Plaintiff's fee request for 7.8 hours spent drafting the Complaint should be reduced because it included FCRA and contractual claims. (Def.'s Br. at 11; *see* Report of Defendant's Expert J. Cohen, at 7-8, ECF No. 224-3). Having considered the Complaint as a whole, the Court finds a 10% reduction to account for drafting the distinct FCRA claim appropriate, warranting the following reductions:

- In January and February of 2020, Osborne billed 2.9 hours for drafting the initial Complaint, 0.1 hours for an email relating to the Complaint, and 0.5 hours for incorporating Milz's additions to the Complaint.[7] (Osborne Cert., Exhibit D, ECF No. 198-7, at 11). Of these 3.5 hours, the Court will **reduce 0.4 hours**. As Osborne's hourly rate is $500, this results in a **lodestar reduction in the amount of $200**.

- Similarly, from January to April of 2022, Milz recorded 1.8 hours drafting the Complaint, 0.1 hours emailing Osbourn regarding the Complaint, 1.7 hours for conferences relating to the draft Complaint, and 0.5 hours for final proofing of the Complaint. (Milz Cert., Ex. A, ECF No. 198-4). These 4.1 hours will be **reduced by 0.4 hours**. As Milz's hourly rate is $555, this results in a **lodestar reduction in the amount of $222**.

- In the same period, Jody Thomas López-Jacobs recorded approximately 0.6 hours for correspondences, conferences and strategy discussions regarding the Complaint. (*Id.*) The Court will **reduce 0.1 hours** for time drafting the Complaint relating to the distinct FCRA claim. At López-Jacobs's hourly rate of $360, this results in a **lodestar reduction of $36**.

In total, the lodestar reduction relating to the drafting of the Complaint is **$458**.

2. *Written Discovery and Discovery Disputes Relating to FCRA Claim*

Defendant argues the Court should exclude 12 hours billed for written discovery concerning the FCRA claim. (Def.'s Br. at 11). While Defendant correctly notes that ten of the eleven interrogatories concerned the FCRA claim, it ignores the fact that only two of the nine requests for production were solely directed at the FCRA claim. (*See* Def.'s Opp., Ex. D, ECF No.

---

[7] The Court also notes that several entries relating to drafting the Complaint were specific to the RESPA and contract claims, which will not be reduced because those claims overlap with the CFA claims, *Silva*, 267 N.J. Super. at 559.

224-4). The Court will further reduce the time associated with written discovery and related disputes concerning the FCRA claim as follows:

- Milz billed 0.8 hours drafting a discovery plan, to which the Court will **apply a reduction of 0.4 hours**. The Court will **exclude an additional 2.2 hours** from the lodestar for time Milz billed relating to written discovery and related disputes primarily concerning the FCRA claim, (Milz Cert., Ex. A, ECF No. 198-4; *see* Def.'s Opp., Ex. B, ECF No. 224-2). These exclusions result in a **lodestar reduction in the amount of $1,443**.

- López-Jacobs billed 0.7 hours relating to the discovery requests and dispute, for which the Court will apply a reduction of 0.3 hours. (*Id.*). As López-Jacobs's hourly rate of $360, this results in a **lodestar reduction in the amount of $108**.

- The Court will **reduce 1.5 hours** of Osborne's time spent drafting written discovery and reviewing Defendant's discovery responses; **1.8 hours** for drafting a letter to Magistrate Judge Donio concerning the FCRA claim, (*see* ECF No. 54; *see* Def.'s Br. at 7-8); and **1.2 hours** relating to the discovery dispute. Thus, the Court will **reduce 4.5 hours** from Osborne's time with respect to FCRA discovery issues, at his rate of $500, for **a lodestar reduction in the amount of $2,250**.

In total, the lodestar reduction relating to the FCRA written discovery and related disputes is **$3,801**.

3. *Deposition Tasks Relating to FCRA Claim*

Defendant argues that Plaintiff's fee request for 19 hours spent preparing for and deposing Defendant's corporate representative should be reduced because "nearly a quarter of the deposition" allegedly related to the FCRA claim.[8] (Def.'s Br. at 12). The Court further reduces Plaintiff's hours relating to the FCRA claim as follows:

- While Milz has voluntarily reduced his hours relating to the credit reporting agency depositions, he did not reduce any of the 4.8 hours dedicated to the deposition of Defendant's corporate representative. (ECF No. 198-4). The Court will apply a **reduction of 1.2 hours** from Milz's time, which at the hourly rate of $555 amounts **to a lodestar reduction of $666**.

---

[8] While Defendant has not produced relevant portions of the deposition transcript to support its objection, Plaintiff bears the burden in the first instance to demonstrate its hours are reasonable.

11

- A review of the record reveals that Osborne primarily excluded hours committed solely to the FCRA claim in the same manner as Milz, except one entry pertaining to draft subpoenas to the credit reporting agencies. The Court will **exclude the 1.3 hours** billed on October 29, 2020 in this regard, (ECF 198-7; *see* Def.'s Br. at 7). Osborne also billed 13.8 hours for the deposition of Defendant's corporate representative and related preparation, (ECF 198-7), for which the Court will exclude **3.4 hours**. At Osborne's rate of $500, this totals **a lodestar reduction in the amount of $2,350.**

In total, the lodestar reduction relating to the deposition of Defendant's corporate representative FCRA written discovery and related dispute is **$3,016.**

### 4. *Dispositive Motion Practice Relating to Relating to FCRA Claim*

Defendant objects to 54 hours Plaintiff's counsel spent with regard to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. (*See* Def.'s Br. at 12; ECF Nos. 198-4, 198-7). Based on the Court's review of the summary judgment motions and related time entries, it appears that approximately half of the briefings were indeed committed to the distinct, unrelated, and unsuccessful FCRA claim. Thus, the Court will further apply a **reduction of 13.5 hours** to Milz's time spent relating to the summary judgment briefing for a **lodestar reduction of $7,492.50** for Milz.[9]

Similarly, the Court finds it appropriate to partially reduce Osborne's time relating to Summary Judgment briefing. A review of the entries reveals that Osborne expended approximately 25 hours for summary judgment briefing between February and May of 2022. ECF No. 198-7. The Court in its discretion will **exclude 12.5 hours** to reflect the distinct FCRA claim. As Osborne's hourly rate of $500, this amounts to a **lodestar reduction of $6,250** for Osborne. In total, the lodestar reduction relating to the Plaintiff's summary judgment briefing is **$13,742.50.**[10]

---

[9] The Court finds that the voluntary reductions Plaintiff makes as to López-Jacobs and Flitter regarding these motions was more robust and therefore, no further reductions are merited. (*See* ECF Nos. 198-4, 227).

[10] Defendant also argues that the Court should reduce hours expended in defense of its Motion to Dismiss. The Court will not do so because Defendant's Motion sought dismissal of all claims, including the CFA claim, and Plaintiff was successful in opposing it. Moreover, unlike the summary judgment briefing which involved an affirmative cross-

In sum, the Court finds the foregoing reductions of time spent litigating Plaintiff's FCRA claim are warranted, as the FCRA claim was "distinct in all respects" from the other counts. *See Rendine*, 141 N.J. at 335; *Rode*, 892 F.2d at 1183. Taken together, the total lodestar reduction for all the foregoing FCRA activities is **$21,017.50**.[11]

### B. Plaintiff's Staffing of the Case was Reasonable

Defendant argues that the presence of more than one lawyer at strategy conferences, depositions, and the trial were "duplicative and unnecessary." (Def.'s Br. at 12-15). The Third Circuit has held that "[e]ven if [multiple] attorneys had worked on similar tasks, this would not be per se duplicative" because "[c]areful preparation often requires collaboration and rehearsal." *Planned Parenthood of Cent. New Jersey v. Att'y Gen. of State of New Jersey*, 297 F.3d 253, 272 (3d Cir. 2002). Likewise, "[c]onferences between attorneys . . . are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall." *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F.Supp.2d 480, 488 (D.N.J. 1998).

Here, Plaintiff was represented by the Milz firm, which utilized one lead attorney (Milz), one associate (López-Jacobs), and a senior partner (Flitter) for a contentious yearslong litigation requiring discovery, motion practice, and a trial. Moreover, the retention of local counsel (Osborne) was reasonable as the matter arose in Colorado and the parties are from Colorado, where

---

motion by Plaintiff, the Motion to Dismiss was solely within Defendant's control. For the same reasons, the Court rejects Defendant's request to exclude hours defending its Motion for a Protective Order, which Defendant chose to file and which was ultimately unsuccessful. Finally, the Court rejects Defendant's request to exclude hours Plaintiff's counsel expended with respect to the motions *in limine*, as Plaintiff's affirmative motions did not concern the FCRA claim and the Court does not wish to disincentivize counsel from submitting motions *in limine* that are crucial to shaping the trial, particularly considering that Plaintiff achieved substantial success on his CFA claim as a result.

[11] As previously stated, this figure is in addition to the voluntary reductions Plaintiff's counsel made with respect to its CFA claim. (*See* ECF Nos. 198-4, 227).

13

the case may have been transferred. (*See* ECF No. 42). Accordingly, the Court finds that Plaintiff's staffing of the case was appropriate and will not apply any reductions as a result.

### C.     Contingency Enhancement

Finally, the Court considers whether to enhance the lodestar fee. "In determining whether a lodestar award should be enhanced by a contingency multiplier, *Rendine* instructs the Court to consider: 'whether the case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment.'" *Hightower v. Ingerman Mgmt. Co.*, No. CV 17-08025, 2022 WL 17543310, at *1 (D.N.J. Dec. 2, 2022). This Court has adhered to the range for typical enhancements set forth in *Rendine*, which teaches that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." *Id.* (quoting *Rendine*, 141 N.J. at 335); *see, e.g., Hurley v. Atl. City Police Dept.*, 933 F.Supp. 396, 430 (D.N.J. 1996) (Irenas, J.), *aff'd*, 174 F.3d 95 (3d Cir. 1999); *Leiva v. City of Trenton*, No. 13-05136, 2021 WL 2722718, at *9 (D.N.J. June 30, 2021) (Shipp, J.).[12]

First, in alignment with the statutory purpose of the CFA to allow litigants with valid claims access to competent counsel, Plaintiff was retained on a pure contingency basis. *See Wanetick*, 163 N.J. at 490; (ECF No. 198-4, at ¶53). As in *Hightower*, "Plaintiff's counsel's payment was entirely dependent upon eventual success at trial (and likely the fee-shifting statutes)." *Hightower*, 2022 WL 17543310, at *3.

---

[12] Defendant mischaracterizes Plaintiff's contingency enhancement request as "exceptional," but the case law is clear that 50% is within the *ordinary* range and does not trigger the standard for analyzing *exceptional* enhancements.

Second, the Court finds that counsel had little ability to mitigate the risk of loss. Plaintiff's Complaint did not include a high monetary demand that mitigated the risk of loss. (ECF No. 1); *see Baughman v. United States Liab. Ins. Co.*, 723 F.Supp.2d 741, 753 (D.N.J. July 13, 2010) (holding risk of contingent fee is mitigated where substantial damage award asserted). Moreover, Plaintiff made multiple efforts to settle the case early for modest amounts, yet Defendant repeatedly refused.[13] (ECF No. 198-7). In *Hightower*, the court found that a typical enhancement in the 20% to 35% range was insufficient, in part, because the defendant "*never* demonstrated willingness to consider a reasonable settlement as evidenced by the offer of judgment for $75,000 filed on the eve of trial." *Hightower*, 2022 WL 17543310, at *3. Similarly, here, the fact that Defendant repeatedly refused reasonable settlement offers demonstrates that it foreclosed every effort by Plaintiff's counsel to mitigate the risk inherent to contingency fees. *Id.*

Finally, "other economic risks were aggravated by the contingency of payment." *Id.*, at 1. Enhancement is favored where, as here, a plaintiff's counsel "undoubtedly had to expend significant efforts to litigate" the case. *Hightower*, 2022 WL 17543310, at *4. Enhancements of 25% have been supported in cases "without such substantial efforts from counsel." *Id.* Here, Plaintiff's counsel faced a "Stalingrad defense," and due to Defendant's refusal to reasonably consider settlement, expended significant resources to try the case to verdict. *See id.* Just as in *Hightower*, "[t]here can be no doubt that the way this case was litigated by Defendant unnecessarily increased costs and attorneys' fees in this case, and the Court cannot ignore that fact." *Id.* The teaching of *Hightower* applies here, that "[t]his conduct is also important to consider

---

[13] While usually not admissible or relevant under Rule of Ev. 408, settlement discussions may be considered in the award of fees. *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009). Here, the record reflects that Plaintiff offered to settle the matter for $100,000, and thereafter increased its offer to $225,000 and then $300,000. (Certification of Matthew Osborne, ECF No. 198-7, ¶12, Ex. A; Pl.'s Br. at 4-5). Defendant refused, reduced its best offer to $75,000 on the eve of trial, and further reduced its offer after closing arguments. (*Id.*)

15

because it only serves to deter attorneys from taking these types of cases and thus frustrates public policy. The entire purpose of New Jersey's fee-shifting regime is to "attract[ ] counsel to socially beneficial litigation." *Id.* (quoting *Walker*, 35 A.3d at 1185–86). The Court's "feel of the case" is entitled to consideration in the overall analysis. *Id.*

Accordingly, the Court finds in its discretion that this case merits an enhancement "in the upper range sanctioned by *Rendine*," *id.*—an enhancement of 40%.

### D. Plaintiff's Litigation Costs Are Recoverable

Defendant argues that Plaintiff's litigation costs are not recoverable. (Def.'s Br. at 21-22). To the contrary, the CFA by its express terms requires Defendant to pay Plaintiff's "reasonable attorneys' fees, *filing fees and reasonable costs of suit*." N.J.S.A. 56:8-19 (emphasis added); *see Finkelman*, 810 F.3d at 198 n.71. The Third Circuit has interpreted costs in statutory fee-shifting cases to include filing fees, reproduction expenses (*i.e.*, transcripts), postage, travel time and attorney expenses. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Defendant argues that Plaintiff should not recover travel and *pro hac vice* filing expenses as punishment for hiring counsel from another forum. (Def.'s Br. at 21-22). This ignores the fact that the matter arose in Colorado, with parties located in Colorado, thus meriting the retention of local counsel.

Accordingly, the Court finds that Plaintiff's requested costs are reasonable and thus Plaintiff is entitled to recover those costs.

### E. Post-Trial Work

Plaintiff further seeks recovery of fees incurred post-trial. (Pl.'s Reply Br. at 14-15; *see* ECF Nos. 227, 227-1). While Plaintiff raises this claim for the first time in its Reply, Defendant has conceded that Plaintiff is entitled to reasonable fees relating to his CFA claim and has not requested leave to file a sur-reply pursuant to L.Civ.R. 7.1(d)(6) to oppose Plaintiff's application

16

for post-trial fees. (*See* Def.'s Br. at 1). Moreover, "[a] request for attorney's fees should not result in a second major litigation." *Jama*, 577 F.3d at 179. Accordingly, having determined that Plaintiff is indeed entitled to recover attorneys' fees and costs incurred in the successful prosecution of his CFA claim, the Court will consider whether its holding supports fees for post-trial work.

Courts award attorneys' fees for post-trial services related to the prevailing claim but assess the application of a contingency enhancement for such services independently "since the risk of loss [i]s substantially reduced after trial." *Blakey v. Cont'l Airlines, Inc.*, 2 F.Supp.2d 598, 608 (D.N.J. 1998) (holding "[t]he Court will not reduce the postjudgment fees, which were largely necessitated by [the defendant's] posttrial motions and this fee application," but declining "[a]n enhancement on postjudgment fees"); *see Rendine*, 276 N.J. Super. at 463 (affirming fee award for post-trial services without contingency enhancement).

Here, Plaintiff seeks fees for post-trial work relating to Plaintiff's CFA recovery, such as opposition to Defendant's Motion for Reconsideration, Motion for Stay and for Approval of Supersedeas Bond, as well as fees related to the instant application. *See* N.J.S.A. 56:8-19 (mandating reasonable fees for successful CFA claim); (*see, e.g.*, ECF Nos. 107, 194, 200). The Court thus finds that Plaintiff's requested fees for post-trial services are reasonable, however, it will apply a lower contingency fee multiplier because "although plaintiff[] conceivably might have lost post-trial motions, that risk of loss was much smaller than at the outset of the case." *See Rendine*, 276 N.J. Super. at 463.[14]

---

[14] As Defendant prevailed on its motion to stay, some risk remains as Plaintiff's counsel will continue to bear the costs of litigating the appeal and any other post-trial submissions by Defendant. There is always the possibility that a change in circumstances frustrates counsel's ability to continue litigating out-of-pocket against Defendant's "Stalingrad defense," impacting Plaintiff's ability to ultimately recover. This would be at odds with the CFA's statutory purpose to incentivize competent counsel to litigate against deep-pocketed entities on behalf of consumers. While the existence

Accordingly, the Court will accept the 82.5 hours of post-trial work incurred by the Flitter Milz firm in the amount of $41,954.50 and the 6.5 hours of post-trial work by the Osborne firm in the amount of $3,250 but apply an ordinary and typical contingency enhancement of 20%.[15]

## F. CONCLUSION

For the reasons expressed above, the Motion for Attorneys' Fees is **GRANTED** in part. Plaintiff is hereby awarded a fee award in the amount of $322,320.50 with a 40% enhancement, totaling $451,248.70 for services rendered through January 31, 2024 and litigation costs of $11,472.50. Plaintiff is further awarded $45,204.50 for post-trial services with a 20% enhancement, totaling $54,245.40.[16]

An accompanying Order shall issue.

Dated: September 25, 2024

KAREN M. WILLIAMS
United States District Judge

---

of a supersedeas bond in the amount of $4,155,915.00 (ECF No. 219) protects against the risk of *Defendant* becoming insolvent, it does not mitigate all the risks that Plaintiff's counsel continues to face with respect to post-trial litigation.

[15] Notably, as the recalcitrance of a defendant is a factor in evaluating an upward contingency fee enhancements, the Court will consider increasing this enhancement should Defendant choose to defy the Third Circuit's teaching that "[a] request for attorney's fees should not result in a second major litigation." *Jama*, 577 F.3d at 179.

[16] Taken together, Plaintiff's total fee award is $505,494.10, with $11,472.50 in costs, for a sum of $516,966.60.